UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHELSEA DONINI,<br><br>                    Plaintiff,<br><br>          -against-Peezy<br><br>PHILLIP PEAKS professionally known as "PEEZY",<br><br>                    Defendant. | Case No.  22-cv-9706<br><br><br>**COMPLAINT** |

Chelsea Donini (hereafter "<u>Plaintiff</u>" or "<u>Donini</u>"), by her attorneys Meloni & McCaffrey, a Professional Corporation, as and for her Complaint against Phillip Peaks, professionally known as "Peezy" ("<u>Defendant</u>" or "<u>Peezy</u>"), alleges as follows:

## <u>INTRODUCTION:</u> *No Good Deed Goes Unpunished*

In this action, Plaintiff Chelsea Donini seeks redress for Defendant Peezy's multiple contractual breaches, tortious interference, defamation, and emotional distress. Plaintiff is now fighting for her professional life, which had been exemplary in every way until Peezy began his campaign to destroy it in order to avoid his contractual commitments to Plaintiff.

Until recently, Plaintiff was the Director of Marketing and Product Manager at Empire Distribution, Records and Publishing Inc. ("<u>Empire</u>"), founded in 2010 by CEO Ghazi Shami. In addition, Plaintiff also performs services as a professional personal manager for musical artists.

Defendant Peezy is an influential Detroit hip-hop artist who rose to prominence as part of the Detroit's Team Eastside rap collective. His life as an alleged "6 Mile Chedda Grove" gang member by the United States attorney informed the style of his music and his professional persona as a music artist.   This came at a steep price to Peezy, however, as in 2016 he pled guilty to federal

racketeering and conspiracy charges involving predicate charges that he and 6 Mile members distributed heroin and other controlled substances for profit. Some of those same 6 Mile members also were charged with murder.

During Peezy's 18-month incarceration, Plaintiff provided Peezy with professional guidance and advice and successfully shepherded Peezy's career as both his personal manager and Product Manager at Empire.

For example, Plaintiff successfully put together 2 albums (*Ghetto Rich N\*\*\*as* and *Ballin Ain't A Crime 2*) and also signed 3 artists to Peezy's production company Boyz Ent (Rio Da Yung OG, Reese Youngn, RMC Mike).  Plaintiff also shopped and landed deals for Rio & Mike and proposals for Reese.  Finally, Plaintiff also made sure both Peezy's family and girlfriends were taken care of.

Prior to Peezy's release from prison in February 2021, Plaintiff entered into a formal written management agreement dated May 1, 2019 (the "Management Agreement") and continued to assist Peezy in his return to the prominence in the music industry.  Plaintiff devoted herself to making invaluable business and creative contributions to Peezy's entertainment career.

In or about June 2022, inexplicably and without any basis or warning, Defendant Peezy breached the Management Agreement with Plaintiff by *inter alia* virtually expurgating Plaintiff from his professional life without cause or explanation. What is all the more egregious is that while Peezy suddenly reneged on his contractual obligations to Plaintiff, and for no discernable or rational reason whatsoever, he also embarked on a vindictive scorched earth campaign to eviscerate Plaintiff's excellent reputation as a personal manager and business executive at Empire. Defendant Peezy posted outlandish and defamatory lies about Plaintiff on his social media accounts, including an Instagram post where he said he made a million dollars as soon as he fired

"his dumb-ass manager." He also encouraging his fans and others to further spread the lies and contacted Plaintiff's other artists under her management in an attempt to destroy Plaintiff's business relationships with them. Finally, he interfered with Plaintiff's business and professional relations with her employer, Empire Distribution, by pitting Peezy − one of Empire's key artists − against Plaintiff, one of Empire's key employees.

Empire sided with Defendant Peezy, and improperly terminated its professional relationship with Plaintiff, without basis or cause, irrevocably damaging Plaintiff's career in the music industry.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Chelsea Donini is an individual and domiciliary of the State of Connecticut.

2.      Phillip Peaks, professionally known as "Peezy," is an individual and domiciliary of the State of Michigan.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The citizenship of Plaintiff is fully diverse from that of Defendant and the amount in controversy exceeds $75,000, exclusive of interest.

4.      In addition, this Court has exclusive subject matter jurisdiction over Defendant Peezy because the governing Management Agreement between the parties herein specifically provides that "all actions or proceedings arising directly or indirectly from this Agreement shall be arbitrated or litigated before arbitrators or in courts having a situs within New York, New York;" that "[the parties] hereby consent to the jurisdiction of any local, state or federal court in which such an action or proceeding is commenced that is located in New York, New York;"" and that "[the parties] agree not to disturb such choice of forum (including waiving any argument that venue in any such forum is not convenient)."

5. This Court has personal jurisdiction over Defendant Peezy because he conducts business continuously and systematically in New York for the purpose of engaging in, inter alia, performances and related activities in the State of New York pertaining to the sale of sound recordings exploited there under his authorization and at his direction.

6. In addition, this Court has personal jurisdiction over Defendant Peezy because the governing Management Agreement states in relevant part that the parties "hereby consent to the jurisdiction of any local, state or federal court in which such an action or proceeding is commenced that is located in New York, New York; agree not to disturb such choice of forum (including waiving any argument that venue in any such forum is not convenient) * * * * and waive the personal service of any and all process upon them and consent that all such service of process may be made by certified or registered mail, return receipt requested, addressed to the respective parties at the address set forth [in the agreement]."

7. Finally, venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District and also because the governing Management Agreement between Plaintiff and Defendant Peezy provides that "any litigation initiated by any party hereto in connection with this Agreement may be venued (sic) in either the state or federal courts located in New York, New York."

8. Accordingly, jurisdiction and venue over Defendant Peezy are proper before this Court.

## **SUMMARY OF FACTS**

**A.    Background.**

9. Plaintiff has been involved in the music industry since her graduation from Rutger's University in 2013.

4

10.     Plaintiff began working as a Digital Marketing Assistant with Island Def Jam Music Group in May 2013.  In April 2014, Plaintiff was promoted to Social Media Strategist at Island Records.    In October 2014, Plaintiff became Urban Digital Marketing Coordinator at RCA Records.

11.     In August 2016, Plaintiff became Digital Marketing Manager at Def Jam Records and was promoted to the Marketing and Digital Strategy Department in January 2018, where she was employed until August of 2018.

12.     In 2018, Plaintiff was hired as Product Manager and was soon promoted to the position of Director of Marketing at Empire, where she continued to work with glowing reviews until Defendant began his improper attempts to end her career.

13.     In her position as Director of Marketing, Plaintiff met with the company's owner and visionary, Ghazi Shami, on a regular basis to discuss the various Empire clients that Plaintiff was handling.  She developed a promising career there and had open access to the corridors of power. Her future at Empire looked bright.

14.     In early 2022, Ghazi Shami promised Plaintiff that she would soon be promoted to a Vice President position at Empire.

15.     Since 2016, Plaintiff has also worked as a personal manager for musical artists, a practice which has been sanctioned by Empire with Plaintiff as well as other Empire employees.

16.     In 2018, Plaintiff, working at her position as Product Manager for Empire, was introduced to Defendant Peezy, who was at that time in the midst of his criminal problems. Plaintiff recognized Defendant's talent and continued to support Defendant's music and provided him with her advice and assistance in sustaining his musical career while he was incarcerated.

17.   Defendant was signed to a recording agreement with Empire at the time he was introduced to Plaintiff.

18.   Plaintiff used her position at Empire to support and assist Defendant's continued success at his label.

19.   On June 16, 2019, to reward all of the hard work Plaintiff had been performing on his behalf, Defendant Peezy formalized his personal management relationship with Plaintiff, entering into the Management Agreement. The "Effective Date" for the Management Agreement was May 1, 2019.  A copy of the Management Agreement as attached hereto as Exhibit A.

20.   The Management Agreement provides that Plaintiff would provide her personal management services to Defendant in all aspects of his career in the Entertainment Industry, which is broadly defined as follows:

> "Entertainment Industry" includes, without limitation, all services and activities in such fields of endeavor as phonograph records (including but not limited to recording and production), transcriptions, musical and/or dramatic performances, singing, radio, music publishing, corporate appearance, television, motion pictures, radio and television commercials, commercial merchandising, endorsements and tie-ins and for all and any other media of entertainment for which Artist may be or become qualified; and the sale, lease or other disposition of musical, literary, dramatic or other artistic material which Artist may create, compose, write or collaborate, directly or indirectly, in whole or in part, in any and all fields; any act, unit or package show of which Artist may be the owner or pail owner, directly or indirectly; and all other activities and interest in any way connected with or appurtenant to the entertainment industry and related fields including the uses and licensing of Artist's name, voice and/or likeness and/or branding in connection with Artist."  *See* Ex. A, ¶B.

21.   The "Term" of the Management Agreement was defined as "a period commencing as of the Effective Date and continuing for three (3) years. Thereafter, the Term shall continue on the same terms and conditions, unless either Artist or Manager shall have notified the other in writing (Email shall suffice) prior to the end of the Term to the contrary or until terminated by either party on no less than thirty (30) days prior written notice." *See* Ex. A, ¶ 1.

22.   In return for Plaintiff's valuable personal management services, Defendant was to irrevocably assign to and promptly pay Plaintiff commissions "in an amount equal to twenty percent (20%) on all Gross Monies (as defined herein) in connection with all activities hereunder received by or on behalf of Artist or credited to Artist's account, during the Term or after the Term to the extent provided herein".  See Ex. A, ¶ 3 (a)(i).

23.   "Gross Monies" was defined under the Management Agreement as encompassing "all forms of income, payments, compensation, emoluments and/or any other thing of value given to Artist in lieu of compensation for Entertainment Industry services, including without limitation, salaries, advances, fees, royalties, bonuses, loans, gifts, shares of receipts or profits, stock and stock options (provided Manager pays its pro-rata share of costs of such stock), received by or credited to Artist or applied for Artist's benefit directly or indirectly (i.e., to any corporation, partnership, or other entity in which Artist has an interest), regardless of by whom procured, received by or on behalf of Artist or for Artist's account as a result of Artist's activities in and throughout the Entertainment Industry". See Ex. A, ¶ 3 (b).

24.   Those commissions were to be based on all agreements substantially negotiated by Plaintiff during the term of the Management Agreement, on all of Defendants Entertainment Industry services or activities and would continue beyond the end of the term of the Management Agreement pursuant to a sunset provision that provided that Plaintiff would continue to collect said commissions at 20%, 10% and 5% for the three years immediately following termination of the Management Agreement. See Ex. A, ¶ 3 (a)(ii).

25.   The Management Agreement also provided that the "interest and compensation set forth in this Agreement which shall be paid to Manager shall be a continuing interest and shall not be revocable by Artist. It is intended by Artist to create an agency coupled with an enforceable

interest therein, and the appointment and engagement of Manager and Manager's right to receive commissions hereunder are the inducements for Manager's entering into this Agreement." *See* Ex. A, ¶ 3 (a)(i).

26.     Defendant also agreed to direct his accountant to account and pay to Plaintiff her commissions on no less than a monthly basis. See Ex. A, ¶ 3 (c)(i).

27.     Defendant also agreed to allow Plaintiff's appointed certified public accountant, attorney, or business manager to inspect Defendant's financial books and records once a year on reasonable notice.  See Ex. A, ¶ 3 (c)(iii).

28.      As referenced above, Plaintiff provided her valuable personal management services throughout the time Defendant was incarcerated, including, without limitation, overseeing his career and sales at Empire.

29.     Upon Defendant's release from prison on February 11, 2021, he was met by Empire's owner with "stacks of cash." https://hiphopdx.com/news/id.60528/title.detroit-rapper-Peezy-leaves-prison-to-empire-boss-ghazi-tacks-of-cash.

30.     Peezy admitted that the cash was a direct result of Plaintiff's hard work while Defendant was incarcerated.   https://www.metrotimes.com/music/it-aint-easy-being-peezy-30429428?media=AMP+HTML.

31.     In large part due to Plaintiff's hard work, Defendant has continued to make millions of dollars since he was released from prison.

32.     Plaintiff has fully performed all of her services as required under the Management Agreement.

33.     Sometime during the spring of 2022, Defendant's relationship took a drastic and erratic turn towards confrontational.

34.    In April of 2022, Defendant sent Plaintiff a text falsely accusing her of stealing money from his Empire "marketing budget."

35.    As part of his campaign of trash talking, threats and defamation, in his music video "Nipsey Blue" he gratuitously added lyrics falsely stating Plaintiff stole money and took advantage of him, presumably referring to the "marketing budget." For example, Peezy raps: "brought you in my personal space around my kids what you do take advantage of me while I'm in the can." "Nipsey Blue" (at 1:04).

36.    Defendant's posting on social media resulted in Plaintiff receiving death threats on-line, like "U scammed peezy out some money [emoji] watch wen I see you bitch" (Melsangelswerv)  and "Wait till we see u @baby_thuggg all we got is Peezy in the city u think we tinna let u play him??????Naaa (punch4pouchy) and "You filling Peezy over You and yo mama You bitches gone die" (Twination2)

37.    Upon information and belief, Defendant shared those same accusations, and worse, with staff at Empire and with other people in the music industry.

38.    In his text message to Plaintiff dated April 24, 2022, Defendant made one of numerous threats about Plaintiff's other management clients: "I get it you work for Ghazi you gotta make money but you about to lose your biggest clients soon."

39.    In a separate text later that same night, Defendant privately apologized for falsely accusing Plaintiff of stealing said money. However, the damage to Plaintiff had already been done.

40.    By July 2022, Defendant instructed his counsel to direct Empire to cancel the "Letters of Direction" he had signed at the beginning of the management relationship directing Empire to pay Plaintiff her commissions on his Empire royalties and advances.

41.    Defendant began concealing his receipt of other Gross Compensation he received for his Entertainment Industry services, despite having a contractual duty to pay Plaintiff her earned commissions thereon. Defendant also stopped paying Plaintiff her earned and owed commissions.

42.    Then, Defendant ghosted Plaintiff and refused to discuss any business dealings with her.

43.    Defendant also began initiating a vitriolic attack on Plaintiff on social media.

44.    In one such social media post Defendant explained that he had no issues with his record company Empire, which he admits gave him "millions," but in direct reference to Plaintiff stated: "but she works for him" and that "we got to put the pressure on him to put the pressure on her" and that "we gotta get the snakes outta the company". https://www.reddit.com/r/CrimeInTheD/comments/x3clzt/Peezy_has_no_issue_with_empire_he _supports_that/.

45.    In a reddit post, Defendant's on-line rant drew the headline: "Peezy goes off on chelsea Aka Baby Thugg from empire🤣" https://www.reddit.com/r/CrimeInTheD/comments/x35wxq/peezy_goes_off_on_chelsea_aka_ba by_thugg_from/

46.    In a similar reposting of Defendant's rant against Plaintiff, Defendant made references to the contract between him and Plaintiff and comes out and states "she was robbing the fuck outta me, what" https://www.youtube.com/watch?v=6gEMmhC_6iI ( at 0:45).

47.    Later in another posted video, Defendant referring to Plaintiff, stated "motherfucker was overcharging me for shit. . . And this is how I knew the motherfucker was cheating me outta the marketing money, right, damn. . . " https://www.youtube.com/watch?v=T2DNpb8kKJo (at 4:04).

48.   In short, Defendant was publicly demanding that Empire fire Plaintiff.

49.   Since Peezy began his campaign against Plaintiff, Ghazi started ghosting her.  It was Plaintiff's intention, and as a professionally courtesy, to alert Ghazi to the fact that she was being forced to sue Peezy, one of Empire's most important artists.

50.   Finally, on September 1, 2022 and at Plaintiff's suggestion, Ghazi set up a conference call to be attended by Ghazi, Empire's head of promotion, and head of Human Resources.  That call happened as scheduled, but Ghazi did not appear on the conference call.

51.   At or about that time, Plaintiff was informed that, as a result of the Peezy situation, she would not be promoted to the Vice President position at Empire – a promotion that Ghazi had promised her earlier in the year.

52.   That reason became apparent during a follow up conference call on October 10, 2022, with Empire's Head of Marketing. During that call, Plaintiff was advised that she was being terminated "immediately" from her position at Empire "for cause."  The reason she was given was because of the "dispute with Peezy" which would "conflict or interfere with Empire's business or reflect negatively on [Empire's] brand."  In other words, it had nothing to do with Plaintiff's job performance at Empire, which had been exemplary to that point, but because of the conflict Peezy had created at Empire and his insistence that Empire fire Plaintiff.

53.   Defendant also reached out directly to Plaintiff's other personal management clients and attempted to poison Plaintiff's relationships with those clients.

54.   In one posting, he tells his viewers "Well, I'm telling my niggas in Detroit, whoever fuck with Baby Thugg (Plaintiff's street name in the industry) look into your contract, I'm letting you know right now. . . look into that fake manager shit. . . . .look into that manager shit, look into that contract. . . ."  https://www.youtube.com/watch?v=5278PWgez6w (at 0:10).

55.   In addition, Peezy reached out directly to Plaintiff's clients Payroll Giovani and 600Breezy and shared his defamatory accusations.

56.   As a result of Defendant's actions, Plaintiff lost six clients as of the date of the filing of this lawsuit.

57.   In a post dated September 2, 2022 on #intelhiphop Instagram page, the following post appears:  Peezy warns artist to look over their contract after finding out his old manger took money from him."  https://www.youtube.com/watch?v=AyHOR1vYQ3g.

58.   In a post dated September 14, 2022 on "imsickdetroit" Instagram page, the following post appears:  "#Peezy puts his former manager on blast and warned artists to look over their contracts if they work with her." That post included video footage of Peezy's slanderous comments about Plaintiff.  On that post, Peezy replied "BOYZ DIDDDDD."

59.   As a result of Defendant's irrational conduct and false allegations against her, Plaintiff has demanded that Empire step in and clear her name.  Empire has refused to do so.

60.   Instead, on October 14, 2022, during a conference call with, inter alia, Empire's Head of Marketing and Human Resources, Plaintiff was informed that she was being terminated based upon the allegations asserted and demands imposed upon Empire by Peezy.

61.   Defendant has never properly terminated the Management Agreement as per its terms, and, as such, the term of that Management Agreement remains extant.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

62.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 61 as if fully set forth herein.

63.     By his refusal to properly account and pay Plaintiff her earned commissions on a monthly basis under the Management Agreement, Defendant has materially breached said Management Agreement.

64.     The forgoing acts and omissions constitute material breaches of the Management Agreement that go to its essence.

65.     Plaintiff is owed an amount believed to be at least $1,000,000 for the Commissions due and owing through November 1, 2022.

66.     In addition, Plaintiff will be owed Commissions on Defendant's Gross Compensation as defined in the Management Agreement for its full term, plus the continuing post-term Commissions under the sunset provisions thereto.

67.     As a result of the above conduct, Plaintiff has been damaged as a result of Plaintiffs' conduct in an amount to be determined at trial but in no event less than $1,000,000.

## SECOND CLAIM FOR RELIEF
### (Repudiation of Contract)

68.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant has publicly attacked Plaintiff on social media condemning the Management Agreement and the twenty percent commissions owed thereunder, referring, at times, to Plaintiff being a "snake" and undeserving of said commissions: https://www.reddit.com/r/CrimeInTheD/comments/x3clzt/Peezy_has_no_issue_with_empire_he _supports_that/.

70.     Said public statement and others like it is an express repudiation of his obligations under the Management Agreement, including his obligations to pay Plaintiff the commissions due thereunder.

71.    This repudiation has been further supported by Defendant's ghosting Plaintiff and refusing to have any business contact with her since the summer of 2022.

72.    The forgoing acts and omissions constitute an express and irrefutable repudiation of the Management Agreement that go to its essence.

73.    Plaintiff is owed an amount believed to be in excess of $1,000,000 for the Commissions due and owing through November 1, 2022.

74.    In addition, Plaintiff will be owed Commissions on Defendant's Gross Compensation as defined in the Management Agreement for its full term, plus the continuing post-term Commissions under the sunset provisions thereto.

75.    As a result of the above conduct, Plaintiff has been damaged as a result of Plaintiffs' conduct in an amount to be determined at trial but in no event less than $1,000,000

**THIRD CLAIM FOR RELIEF**
**(Accounting)**

76.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.    Defendant's failure to properly account to Plaintiff for the Commissions owed to Plaintiff has caused  to be injured.

78.    Plaintiff is without knowledge of the exact amount of Commissions owed to Plaintiff. Plaintiff cannot obtain such knowledge or ascertain the exact amount of such monies without a detailed accounting from Defendant, who has sole and exclusive knowledge of the Gross Compensation paid or credited to Defendant.

79.    Plaintiff is entitled to an order of this Court directing Defendant to provide an accurate accounting which specifies in complete detail the information and documents, including,

without limitation, all related contracts concerning such Gross Compensation and Term Product necessary for an audit of his books and records relating thereto.

80.   Furthermore, Plaintiff demands that Defendant make immediate and appropriate payments to Plaintiff for any and all deficiencies established as a result of that accounting, in an amount to be determined at trial, but in no event less than the jurisdictional limit of this Court.

### FOURTH CLAIM FOR RELIEF
**(Defamation)**

81.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.   Defendant has accused Plaintiff of numerous criminal acts, including stealing money from Defendant's recording and marketing accounts.

83.   Defendant has admitted to Plaintiff that he knew these accusations were false when made.

84.   Over the past six months, Defendant has repeatedly published these accusations concerning Plaintiff's purported criminal acts to Plaintiff's employers at Empire, as well as made similar false statements publicly attributing criminal conduct to Plaintiff on social media.

85.   Given that these accusations concern and impact Plaintiff's business, as a personal manager, and accuse her of a crime − Larceny, Embezzlement and/or Misappropriation −said statements are defamatory per se.

86.   As a result of the above conduct, Plaintiff has been damaged in an amount to be determined at trial but in no event less than $1,000,000.

87.   In addition, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial but in no event less than $5,000,000.

## FIFTH CLAIM FOR RELIEF
### (Tortious Interference With Business Relations - Empire)

88.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 87 of this Complaint as if fully set forth herein. Defendant knew that Plaintiff was in existing agreements with other musical artists.

89.    Defendant knew that Plaintiff had an ongoing business relationship with Empire.

90.    Plaintiff's performance of her position at Empire had brought her only accolades and positive reviews by her superiors, including the company's founder and CEO Ghazi Shami. Indeed, before Defendant interceded, Ghazi Shami had promised Plaintiff that she would be promoted to the level of Vice President at Empire.

91.    Defendant tortiously and intentionally interfered with Plaintiff's existing business and/or continuing relationships between Plaintiff and Empire by alleging that Plaintiff stole from him and otherwise cheated him in her role as his personal manager and demanding that Empire terminate her as an employee.  Defendant also publicly called for her firing by Empire in numerous social media postings.  Upon information and belief, Defendant repeated those demands for her termination through direct conversations with her superiors at Empire, including with Ghazi Shami.

92.    On October 14, 2022, Empire acceded to Defendant's demands and terminated Plaintiff's employment, in effect, destroying her career in the music industry.

93.    But for Defendant's wrongful and unjustified interference, Plaintiff would still be employed with Empire and received her promised promotion to Vice President.

94.    As a result of the above conduct, Plaintiff has been damaged in an amount to be determined at trial but in no event less than $5,000,000.

95.    In addition, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial but in no event less than $10,000,000.

## SIXTH CLAIM FOR RELIEF
### (Tortious Interference With Contractual and Business Relations –  Management Clients)

96.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.    Defendant knew that Plaintiff was in existing agreements with other musical artists.

98.    Defendant tortiously and intentionally interfered with the existing agreements and/or continuing business relationships between Plaintiff and other musical artists by causing those artists to prematurely end existing agreements and/or refusing to renew those contracts and expected business relations with Plaintiff.

99.    For example, this summer, Defendant reached out to one of Plaintiff's other personal manager clients, a Detroit rapper named Payroll Giovanni, and told him that Plaintiff was not to be trusted and that he should cut off further contact with her. As a direct result, Payroll Giovani has ghosted Plaintiff.

100.   Regalías Digitales LLC is a firm that helps recording artists and songwriters to collect their music royalties and license their songs to film and television productions, as well as YouTube. In 2020, Plaintiff had hired Regalías Digitales to perform collection services for Defendant's works, as well as the works of artists signed to BoyzEnt LLC, Defendant's production company. For years, Regalías Digitales performed those services and, in accordance with Defendant's agreement with Plaintiff, Regalías Digitales paid Plaintiff her management commissions on the royalties collected by Regalías Digitales.

101.  However, on September 16, 2022, Defendant caused Jeffrey Wooten, his business lawyer, to notify Regalías Digitales to cease and desist from the collection of monies from Defendant's works, a demand with which Regalías Digitales complied.

102.  However, in his email to Josh Norek of Regalías Digitales dated September 16, 2022, Mr. Wooten also demanded: "My client requires you to cease and desist all activity, not just YouTube collection. This also includes 'Rio Da Yung OG' and 'Payroll Giovanni' who do have anyone authorized to act on their behalf."

103.  However, not only does Defendant have no business interests whatsoever relating to Payroll Giovanni or Rio Da Yung OG, but Mr. Wooten also does not represent either of those artists.

104.  Other clients have been approached by Defendant with similar libelous threats and statements.

105.  Defendant has taken these actions for the sole purpose of damaging Plaintiff's reputation with these clients and interfering with her business relationships with them.

106.  By reason of the foregoing, Plaintiff has been damaged through the loss of expected profits from her role as a personal manager, in an amount to proven at trial, but in no event less than $5,000,000.00 in compensatory damages.

107.  Plaintiff is also entitled to an award of punitive damages in an amount not less than $10,000,000, together with interest thereon.

## SEVENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

108.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    During the summer of 2022, Peezy engaged in a negative public relations campaign against Plaintiff knowing that his thousands of followers would become enraged by his knowingly false allegations against Plaintiff.

110.  Plaintiff intended to incite his social media followers into acts of threats and physical violence against Plaintiff in order to pressure Plaintiff into abandoning her rights under her agreement with Peezy.

111.    As a direct result and in response to those social media posts, Peezy's followers began posting on-line threats against Plaintiff, including threats of bodily harm.

112.  As a result, Plaintiff has been compelled to seek psychological counseling to deal with the sustained severe emotional distress, including grief, humiliation, fright, shock, anger, embarrassment, anxiety and outrage, she has been suffering since Peezy began his public relations campaign against her.

113.  Peezy knew or should have known that his conduct would cause Plaintiff's emotional distress.

114.  By reason of the foregoing, Plaintiff has been damaged in an amount to proven at trial, but in no event less than $5,000,000.00 in compensatory damages.

115.  Plaintiff is also entitled to an award of punitive damages in an amount not less than $10,000,000, together with interest thereon.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

116.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117.   During the summer of 2022, Peezy engaged in a negative public relations campaign against Plaintiff with reckless disregard of the fact that his thousands of followers would become enraged by his knowingly false allegations against Plaintiff.

118.   As a direct result and in response to those social media posts, Peezy's followers began posting on-line threats against Plaintiff, including threats of bodily harm.

119.   As a result, Plaintiff has been compelled to seek psychological counseling to deal with the sustained severe emotional distress, including grief, humiliation, fright, shock, anger, embarrassment, anxiety and outrage, she has been suffering since Peezy began his public relations campaign against her.

120.   Peezy knew or should have known that his conduct would cause Plaintiff's emotional distress.

121.   By reason of the foregoing, Plaintiff has been damaged in an amount to proven at trial, but in no event less than $5,000,000.00 in compensatory damages.

122.   Plaintiff is also entitled to an award of punitive damages in an amount not less than $10,000,000, together with interest thereon.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.   On the First Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $1,000,000, plus applicable interest;

b.   On the Second Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $1,000,000, plus applicable interest;

c.   On the Third Claim for Relief, ordering Defendant to provide an accurate accounting which specifies in complete detail the information and documents, including, without limitation, all related contracts concerning such Gross Compensation and Term Product, necessary for an audit of

his books and records relating thereto, and further ordering that Defendant make immediate and appropriate payments to Plaintiff for any and all deficiencies established as a result of that accounting through November 1, 2022;

       d.     On the Fourth Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $1,000,000, plus applicable interest, plus punitive damages in an amount to be proven at trial but not less than $5,000,000;

       e.     On the Fifth Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $5,000,000, plus applicable interest, plus punitive damages in an amount to be proven at trial but not less than $10,000,000.

       f.     On the Sixth Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $5,000,000, plus applicable interest, plus punitive damages in an amount to be proven at trial but not less than $10,000,000.

       g.     On the Seventh Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $5,000,000, plus applicable interest, plus punitive damages in an amount to be proven at trial but not less than $10,000,000.

       h.     On the Eighth Claim for Relief, awarding Plaintiff her actual damages in an amount to be proved at trial, but not less than $5,000,000, plus applicable interest, plus punitive damages in an amount to be proven at trial but not less than $10,000,000.

       i.     Awarding Plaintiff the costs of this action, including her reasonable attorney's fees; and

       j.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues which are so triable.

Dated: November 14, 2022

MELONI & McCAFFREY
A Professional Corportion

By: _____
      Robert S. Meloni
      Thomas P. McCaffrey
3 Columbus Circle – 15th Floor
New York, New York 10019
Email: rmeloni@m2lawgroup.com
Email: tmcaffrey@m2lawgroup.com
Tel: (917) 331-9556

*Attorneys for Plaintiff Chelsea Donini*